**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**WILLIAM MILLER**                                                          **PLAINTIFF**

**V.**                     **CASE NO.: 4:15-CV-323-BD**

**CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration**                                **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff William Miller has appealed the final decision of the Commissioner of the Social Security Administration denying his claims for supplemental security income. Both parties have submitted appeal briefs, and the case is ready for decision.[1]

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015); see also 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

**Background**

Mr. Miller alleged that he became limited in his ability to work due to pain from multiple bullet wounds, hypertension, migraines, and a learning disability. (SSA record at

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #4)

54, 88-93, 192) After conducting a hearing, the Administrative Law Judge[2] ("ALJ") concluded that Mr. Miller had not been under a disability within the meaning of the Social Security Act at any time from January 23, 2012, the date the application was filed, through September 25, 2014, the date of his decision. (*Id*. at 19-20) On April 2, 2015, the Appeals Council denied a request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (*Id*. at 3-6) Mr. Miller then filed his complaint initiating this appeal. (Docket #2)

At the time of the hearing, Mr. Miller was 36 years old and was homeless. (SSA record at 441-42) He had a fifth-grade education and could not read or write. (*Id*. at 442-44) He had never had steady employment. (*Id*. at 446-48)

**The ALJ's Decision**

The ALJ found that Mr. Miller had not engaged in substantial gainful activity since his alleged onset date and that his borderline intellectual functioning, learning disabilities, anti-social personality disorder, morbid obesity, and history of gunshot wounds were "severe" impairments. (*Id*. at 12) He found that Mr. Miller's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (*Id*. at 17-18)

Based on his findings, the ALJ concluded that, during the relevant time period, Mr. Miller retained the residual functional capacity ("RFC") for light work, except he could

---

[2]The Honorable Clarence Daniel Stripling.

not perform jobs that would require reading or arithmetic skills; he could perform only simple, routine, and repetitive job tasks that require only incidental interpersonal contact; and he would have to have supervision that was simple, direct, and concrete. (*Id*. at 16) After hearing testimony from a vocational expert, the ALJ determined that Mr. Miller could perform work as a poultry line picker and loader/unloader. (*Id*. at 18-19) Thus, the ALJ concluded, Mr. Miller was not disabled. (*Id*. at 19)

**Mr. Miller's Allegations**

Mr. Miller generally challenges the ALJ's decision, but focuses on the identification of severe impairments and the credibility assessment. He argues that the medical evidence supports more limitation than the ALJ found. For these reasons, he says, substantial evidence does not support the decision.

**Step Two**

At step two of the disability-determination process, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. §416.920(a)(4)(ii). Mr. Miller contends that the identified impairments are inconsistent with his diagnosis of hypertension; but even if this is true, a diagnosis does not establish a severe impairment. To be severe, an impairment must significantly limit the claimant's physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c) & 416.920(c) (explaining that claimant is not disabled unless he has "impairment or combination of impairments which

significantly limits [the claimant's] physical or mental ability to do basic work activities"). A diagnosis does not make that showing.

Mr. Miller has not pointed to evidence in the record indicating his hypertension significantly limits his ability to do basic work activities. In fact, the record indicates Mr. Miller performed odd jobs, such as washing cars and house cleaning, when those jobs are available to him. (*Id*. at 453) Further, Mr. Miller's treating records indicate that his hypertension could be controlled with medication. (SSA record at 312, 314, 320, 323, 333, 421, 434)

Moreover, the purpose of step two is to weed out claimants whose abilities to work are not significantly limited. *Bowen v. Yuckert*, 482 U.S. 137, 156-57 (1987) (O'Connor, J., concurring) (explaining that the Social Security Act authorizes the Commissioner to weed out applications by claimants who cannot possibly meet the statutory definition of disability at step two of the disability-determination process). If the claimant shows he has a severe impairment, the process proceeds to the next step in the analysis. Once the claimant meets his step-two burden, there is no reversible error so long as the record shows that the ALJ considered all of the medical evidence and all of the claimant's impairments. The record in this case shows that the ALJ considered all of the medical evidence and all of Mr. Miller's impairments, including the combined effects of his impairments. (*Id*. at 10-12, 14-18)

Mr. Miller also complains that the ALJ did not properly consider his obesity. The ALJ found that Mr. Miller's obesity was a severe impairment. (*Id*. at 12) He went on to find, however, that in spite of his obesity and other impairments, he could perform a limited range of light work. (*Id*. at 16-18) There is substantial evidence in the record to support this conclusion. Inge Carter, M.D., examined Mr. Miller on April 27, 2012, and found he had no edema and full range of motion in his back and upper and lower extremities. (*Id*. at 222-23) Dr. Carter also noted that Mr. Miller performed all limb functions and retained full motor strength in his extremities and hands. (*Id*. at 13, 222-23) Dr. Carter concluded that Mr. Miller had only moderate limitations in sitting, standing, walking, and lifting. (*Id*. at 223) There is substantial evidence to support the ALJ's conclusion that, even with his impairments, Mr. Miller could perform a limited range of light work.

**Credibility**

Mr. Miller maintains that the ALJ's assessment that his complaints of disabling pain were not entirely credible is not supported by substantial evidence. (#12 pp. 11-14) A reasonable mind would accept the evidence as adequate to support the ALJ's credibility determination here because the objective medical evidence does not show a basis for Mr. Miller's alleged disabling symptoms. A claimant must prove disability with objective medical evidence; mere allegations are not enough. 42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive

evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. § 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.").

Mr. Miller alleged numerous disabling symptoms including pain in his back and chest, trouble walking, numbness in his left leg, hypertension, swelling in his feet, and migraine headaches. On examination, however, Dr. Carter found that Mr. Miller had no edema and retained full range of motion in his back and upper and lower extremities. (*Id*. at 222-23) Dr. Carter also noted that Mr. Miller performed all limb functions, retained full motor strength in his extremities and hands, and that there was no atrophy. (*Id*. at 222-23) Dr. Carter diagnosed low back pain and chest wall pain, but found that Mr. Miller had only mild -to-moderate limitation in sitting, standing, walking, and lifting. (223)

Mr. Miller complains that the ALJ erred by discounting his complaints because of his infrequent treatment. He asserts that he lacked financial resources and was unsophisticated with regard to services that were available to him. (#12 at 13)

There is substantial support for the ALJ considering Mr. Miller's infrequent treatment. Here, the record indicates that Mr. Miller was capable of seeking medical treatment when needed. He sought treatment for hypertension on February 19, 2014 and March 12, 2014. He also sought treatment at St. Vincent Infirmary in March and July of 2012; October, 2013; and April, and July, 2014.

Additionally, at the hearing, Mr. Miller testified that the Arkansas Department of Correction ("ADC") refused to give him mental health treatment while he was incarcerated. ADC records, however, contradict Mr. Miller's testimony. Psychiatrist Natalie Brush-Strode performed a Psychiatric Evaluation of Mr. Miller while he was incarcerated in the ADC. Mr. Miller reported to Dr. Brush-Strode that he had diagnoses of ADHD, Bipolar, and Schizophrenia in an attempt to convince her that he should not be housed in the general population. (*Id*. at 262) When Mr. Miller discovered that Dr. Brush-Strode would not be helpful in placing him in restricted housing, however, he denied having any problems or need of mental health treatment. (*Id*.) Dr. Brush-Strode reported that, on examination, Mr. Miller "showed no objective signs or symptoms of psychosis, mania, hypomania, anxiety or depression" and concluded he had no need for psychopharmacological intervention. (*Id*. at 263)

Mr. Miller did not seek treatment for his alleged mental impairment during the relevant time period. (*Id*. at 220, 354, 366-67, 380-82, 294-96, 410-11, 424, 431) His lack of medical treatment suggests no disabling symptoms and undermines his credibility.

A reasonable mind would expect a person with disabling mental impairment to seek some type of medical treatment. *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (failing to seek medical assistance for alleged physical and mental impairments contradicted allegations of disabling conditions and supported unfavorable decision); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain and functional limitations are inconsistent with failure to take prescription pain medication or seek regular medical treatment); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) ("A failure to seek aggressive treatment is not suggestive of disabling back pain.").

While Mr. Miller claims to have been unable to afford medication and treatment, the record indicates he continued to smoke cigarettes. (*Id*. at 457)  Smoking is an expensive habit that can be considered when weighing credibility. *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999)(rejecting claimant's position that he could not afford medication when "there is no evidence to suggest that he sought any treatment offered to indigents or chose to forgo smoking cigarettes to help finance pain medication.").  Mr. Miller's claim that he could not seek treatment due to a lack of resources is also undermined by his failure to take advantage of treatment freely available to him while he was in the ADC.

Finally, the ALJ credibility determination is supported by Mr. Miller's activities. Mr. Miller testified he was able to ride a bicycle, walk, ride the bus, clean house, wash

cars, shop in stores, and pay bills.  A reasonable mind would accept the evidence as adequate to support the ALJ's decision that Mr. Miller could perform light work.

**Conclusion**

Substantial evidence supports the ALJ's decision denying Mr. Miller's applications for benefits.  The ALJ made no legal error.  For these reasons, Mr. Miller's request for relief (#2) is DENIED, and the decision denying the application for benefits is AFFIRMED.

DATED this 30th day of August, 2016.

_____
UNITED STATES MAGISTRATE JUDGE